IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK10-83073-TJM |
| ) | A11-8004-TJM |
| KEITH LEROY KOEHLER and ) | |
| PENNY LEE KOEHLER, ) | CH. 7 |
| ) | |
| Debtor(s). ) | |
| BRUNSWICK STATE BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| KEITH LEROY KOEHLER and ) | |
| PENNY LEE KOEHLER, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Trial was held in Omaha, Nebraska, on August 11, 2011, regarding Fil. #1, Complaint, filed by Brunswick State Bank. James Patrick Meuret appeared for Brunswick State Bank and Patrick P. Carney appeared for the debtors/defendants, Keith and Penny Koehler.

The Koehlers were long-term bank customers who borrowed money from the bank on a regular basis. They had financial problems stemming partly from medical expenses. Mr. Koehler's wages had been garnished several times.

Mr. Koehler had discussed his financial situation with Gary Vesely, executive vice president of the bank, on several occasions. He even told Mr. Vesely that it was likely a bankruptcy case would be filed in the near future.

On March 30, 2009, the debtors consolidated a number of promissory notes and thereby financed a total of $17,138.15 (Fil. #13).

On June 28, 2010, Mr. Koehler borrowed $500.00 and, with prepaid finance charges, owed the bank $535.00 on a very short-term promissory note. At the time that note was executed, Mr. Vesely asked Mr. Koehler that if there was a bankruptcy, would Mr. Koehler reaffirm the debt to the bank. Mr.Koehler agreed there would be no problem and the bank would be repaid.

On September 10, 2010, the bank refinanced several notes with the total amount of the outstanding debt then becoming $14,031.90. That note was prepared by Ryan Vesely, an assistant vice president. Ryan Vesely testified that both Mr. and Mrs. Koehler were present during the discussion of the refinancing and that when he asked them if a bankruptcy was filed, would they reaffirm the debt, both Mr. and Mrs. Koehler said they would. He testified that he asked them both twice and both said yes, they would reaffirm the debt. That testimony is somewhat supported by Fil. #20, a document entitled "Credit File Comments." It is a written record of notes made by bank employees when dealing with Mr. or Mrs. Koehler, or both. The entry for September 10, 2010,

states: "Renewed all notes and made one new note for $14,000 at 12% fixed for about 3 years with $250 biwkly pymts. Note includes L & D. Lowered pymts until get re-afirmed [sic] from BR."

Notwithstanding Ryan Vesely's testimony that he discussed reaffirmation on September 10, 2010, with both debtors, the "Credit File Comments" document does not state that both of the Koehlers were present when the loan was refinanced. This is significant because the note itself, Fil. #18, shows Keith Koehler's signature on September 10, 2010, but shows Penny Koehler's signature dated September 16, 2010.

Ryan Vesely's testimony that both Koehlers were present and acknowledged to him that they would reaffirm all of the debts in case they filed bankruptcy is the only evidence supporting the bank's position that Mrs. Koehler ever stated the bank loans would be reaffirmed. Neither party called Mrs. Koehler to testify. I could find Mr. Ryan Vesely's testimony on this point to be inconsistent with the documentary record and therefore find that Mrs. Koehler did not, at any time, make a promise to the bank that the bank loans would be reaffirmed. However, Mrs. Koehler could have countered the testimony by denying she was present on September 10 when the refinancing took place, but she did not testify. I therefore find that she, along with Mr. Koehler, in consideration for the refinancing, did promise that the bank would not be hurt if the bankruptcy was filed

On October 4, 2010, Mr. Koehler borrowed $2,035.00 on a separate promissory note (Fil. #19). He informed Gary Vesely that the purpose of that loan was to pay $1,500.00 to the lawyer who would file the bankruptcy and to give him $500.00 to be used for living expenses. The $35.00 is a prepaid finance charge. Mr. Gary Vesely testified that Mr. Koehler stated he would reaffirm all of the debts because he did not want the bank to be hurt, since the bank had taken care of the family. Based upon that representation and prior representations by Mr. Koehler concerning reaffirmations, Gary Vesely granted the loan.

Shortly thereafter, the debtors filed a Chapter 7 bankruptcy. Their lawyer prepared a reaffirmation agreement for the $2,035.00 debt. The Koehlers signed it and it was sent to the bank. It has not been filed. The debtors did not submit a reaffirmation agreement for the balance of the debt which was refinanced on September 10, 2010.

The bank repossessed and sold the collateral supporting the refinanced note and applied the proceeds to that note.

The bank filed this adversary proceeding under 11 U.S.C. § 523(a)(2)(A). That section provides that a discharge does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. It is the position of the bank that it would not have continued to make loans to the debtors or refinanced their debt, but for the assurances the debtors gave to the bank officers that even if bankruptcy was filed, they would reaffirm the debts. The bank believes those promises to reaffirm were false, that the debtors knew they were false and that they intentionally made the statements in order to induce the bank to make the loans. In addition, it is the bank's position that bank officers reasonably relied upon the statements of their long-term customers and have been harmed as a result.

At trial, Mr. Koehler admitted that each time in 2010 he borrowed money from the bank and was asked whether the bank would be paid even if there was a bankruptcy, he told the bank officer

the bank would be paid. He testified he did not know what it meant to reaffirm the debt, but did intend to pay the debts. It was only when the bankruptcy petition and schedules I and J were prepared that he realized he did not have the ability to pay all of the debt.

To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. R & R Ready Mix v. Freier (In re Freier), 604 F.3d 583, 587 (8th Cir. 2010). If the creditor proves a partnership between two of its debtors, non-dischargeability may be imputed from one partner to the other if the otherwise innocent debtor knew or should have known of her partner's fraud. Treadwell v. Glenstone Lodge, Inc. (In re Treadwell), 637 F.3d 855, 860 (8th Cir. 2011) (citing Strang v. Bradner, 114 U.S. 555, 561, 5 S.Ct. 1038, 29 L.Ed. 248 (1885) and Walker v. Citizens State Bank of Maryville, Mo. (In re Walker), 726 F.2d 452, 454 (8th Cir.1984) (per curiam)).

One issue here is whether the bank justifiably relied on Mr. Koehler's representations that the debt would be reaffirmed. Justifiable reliance is a lower standard than reasonable reliance. Treadwell, 423 B.R. at 314 (citing Field v. Mans, 516 U.S. 59 (1995)). Reliance may be justifiable even when an investigation would have revealed the falsity of the representation. Islamov v. Ungar (In re Ungar), 429 B.R. 668, 673 (B.A.P. 8th Cir. 2010) (citing Freier, 604 F.3d at 587–88). "[A] creditor 'cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" Ungar, 429 B.R. at 673 (quoting Freier, 604 F.3d at 587–88).

As a factual matter, the bank did justifiably rely on the promises to repay the loans. The debtors were long-term and regular customers; the bank knew the financial condition of the debtors and their income in prior years; and Keith engaged in up-front discussion with the bank officers concerning the probable need to file bankruptcy. The bank officers had no reason to disbelieve the promises.

However, the bank's position that its officers have inferred, and the court should infer, that each of the promises to repay was a false representation or actual fraud when made, is rebutted by Keith's testimony on redirect examination. He testified that it was only when he compared his schedules of income and expense at the time they were prepared for the bankruptcy filing that he realized he would not be able to pay the financed debt. Those schedules show current monthly income of $1,025 and current monthly expenses of $1,540, not including any repayment on the secured or unsecured debt. In other words, the debtors, at that time, were unable to pay their monthly expenses, which is supported by the fact that they borrowed small amounts of money on a regular basis from the bank.

Based upon the above facts, I find that the debtors' statements that they would repay the bank were not false or fraudulent when made and, therefore, the debt or debts owed to the bank should not be excepted from discharge.

On the other hand, even if I were to find that the promises to repay the debts notwithstanding bankruptcy were false when made, such promises were the equivalent of an oral pre-petition representation to waive the future discharge in bankruptcy. Such a pre-petition waiver

of discharge is unenforceable. See Marra, Gerstein & Richman v. Kroen (In re Kroen), 280 B.R. 347, 352 (Bankr. D.N.J. 2002).

 In the Kroen case, an attorney was representing Mr. Kroen in a pre-petition divorce case. The representation in the divorce matter continued during the debtor's bankruptcy case. The attorney filed an adversary proceeding to except his fees from discharge under § 523(a)(2)(A), alleging that the debtor told the attorney before filing bankruptcy that he would not discharge the debt owed to the attorney. The debtor denied making any such representations. On summary judgment, the court found that, regardless of what the facts may have been, the fundamental issue was the attorney's purported reliance on an oral pre-petition representation to waive discharge in bankruptcy, which was unenforceable and offends the idea of a fresh start. This conclusion was cited favorably in Herz v. Steil (In re Steil), 2006 WL 2662694 (Bankr. N.D. Iowa Aug. 14, 2006), where the debtors and the plaintiff had signed a pre-petition agreement concerning repayment of the debt and including the sentence "This agreement may not be included in any Bankruptcy Discharge." In ruling on whether the debtors' conduct prior to signing the agreement rendered the debt non-dischargeable under § 523(a)(6), the court stated that the sentence quoted above was invalid:

> For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy. In re Baumhaft, 271 B.R. 517, 521 (Bankr. E.D. Mich. 2001). The Code is very specific that the only manner in which a debtor can waive the discharge of a specific debt is through the use of reaffirmation agreements. In re Rul–Lan, 186 B.R. 938, 943 (Bankr. W.D. Mo. 1995); 11 U.S.C. § 524(c). Purported prepetition waivers of discharge are void, offending the policy of promoting a fresh start for individual debtors. In re Kroen, 280 B.R. 347, 351 (Bankr. D.N.J. 2002).

Id. at * 3.

 Likewise, Mr. Koehler's statements to the loan officers that he intended to pay the bank even if he filed bankruptcy amount to a pre-petition attempt to waive the discharge of the amounts owed to the bank, which is prohibited by the Bankruptcy Code.

 IT IS ORDERED that the bank's request that the court enter an order excepting the debtors' debts to the bank from the Chapter 7 discharge is denied. Separate judgment will be entered.

 DATED:  September 7, 2011

              BY THE COURT:

              /s/ Timothy J. Mahoney
              United States Bankruptcy Judge

Notice given by the Court to:
 *James Patrick Meuret  Patrick P. Carney
 U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.